IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| MARIA DEL ROSARIO GIRON REYES,<br><br>Petitioner,<br><br>vs.<br><br>TODD LYONS, Acting Director, Immigration and Customs Enforcement, et al.,<br><br>Respondents. | No. C25-4048-LTS-MAR<br><br>**MEMORANDUM OPINION AND ORDER ON PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

## I. INTRODUCTION

This matter is before me on petitioner Maria del Rosario Giron Reyes' motion (Doc. 3) for a temporary restraining order (TRO) and preliminary injunction. Giron Reyes is a Mexican citizen who is being detained and faces removal proceedings. After an immigration judge denied her request for bond hearing, Giron Reyes petitioned this court for habeas corpus relief under 28 U.S.C. § 2241 and then filed a motion for an injunction that would compel either her release or a bond hearing before the immigration judge. Doc. 3-1 at 24. On initial review, I entered an order (Doc. 5) directing respondents (collectively, the Government) to respond to Giron Reyes' motion (Doc. 5), which it has (Doc. 12).[1] Giron Reyes has filed a reply (Doc. 13). Oral argument is not necessary. *See* LR 7(c).

---

[1] The Government's brief did not include Captain Todd Harlow, the administrator of the Woodbury County Jail, though they noted how their arguments applied with equal force to Harlow. Doc. 12 at 3 n.1. Harlow has since filed a motion for joinder to the federal respondent's brief. Doc.14. Some courts have accepted these nonsubstantive "me too" statements like Harlow's. *See, e.g.*, *Star Ins. v. Iron Horse Tools, Inc.*, No. 16-cv-48, 2018 WL 3079493, at *5 (D. Mont. Feb. 7, 2018). Because I will grant Captain Harlow's motion for joinder, I will treat all respondents as being in the same position.

## II. BACKGROUND

### A. Factual Background

Giron Reyes is a citizen of Mexican who entered the United States without inspection in 2005. Doc. 1 at ¶15; *see also* Doc. 3-1 at 1; Doc. 12 at 3. In July 2025, Immigration and Customs Enforcement (ICE) officials arrested her after she backed her car into an ICE vehicle and, after some questioning, admitted to being illegally present in the United States. Doc. 1-2 at 172. Almost a month after her arrest, Giron Reyes was served a notice to appear in removal proceedings. Doc. 12-6 at 1, 4. At her appearance, she requested the immigration judge consider releasing her on bond. Doc. 12-4 at 1. The immigration judge refused, citing 8 U.S.C. § 1225(b)(2) to find that the immigration court lacked jurisdiction to consider bond. *Id*. Giron Reyes claims the deprivation of a bond hearing under her circumstances violates her due process rights and federal law. Doc. 1 at 11-12.

### B. 8 U.S.C. §§ *1225 and 1226*

This case tests the interplay between two immigration statutes. Section 1225 covers "applicants for admission"; defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). These applicants must undergo an inspection by an immigration officer to ensure their admissibility into the United States. 8 U.S.C. § 1225(a)(3); *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). If they are found to be unlawful entrants, they are split into two categories.

If the alien is inadmissible due to fraud or willful misrepresentations, lacks necessary documentation or fits a designation by the Attorney General without having been continuously present in the United States for the past two years, then he or she may be summarily removed (excepting asylum or persecution claims). 8 U.S.C. § 1225(b)(1)(A) (citing *id*. § 1182(a)(6)(C), (a)(7)). An alien who does not fit those categories is still detained pending a removal proceeding. *Id*. § 1225(b)(2)(A) (citing *id*.

§ 1229a). Either way, § 1225 does not anticipate the release of an applicant for admission pending a removal decision. *Cf. Jennings*, 583 U.S. at 297 ("Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded. . . . And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.").

Section 1226 governs the process of arresting and detaining aliens found inside the United States pending their removal. *Jennings*, 583 U.S. at 288. As the Supreme Court explained:

> Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien "pending a decision on whether the alien is to be removed from the United States." § 1226(a). "Except as provided in subsection (c) of this section," the Attorney General "may release" an alien detained under § 1226(a) "on …bond" or "conditional parole." *Ibid*.
>
> Section 1226(c), however, carves out a statutory category of aliens who may not be released under § 1226(a). Under § 1226(c), the "Attorney General shall take into custody any alien" who falls into one of several enumerated categories involving criminal offenses and terrorist activities. § 1226(c)(1). The Attorney General may release aliens in those categories "only if the Attorney General decides … that release of the alien from custody is necessary" for witness-protection purposes and "the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." § 1226(c)(2). Any release under those narrow conditions "shall take place in accordance with a procedure that considers the severity of the offense committed by the alien." *Ibid*.
>
> In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c).

*Id*. at 288–89 (footnote omitted).

Federal regulations detail the bond procedure. First, Department of Homeland Security (DHS) officials make an initial custody determination. 8 C.F.R. § 236.1(c)(8)). If DHS officials decide to keep the alien detained, the person may request a bond hearing before an immigration judge. 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1); *see also* § 1003.19. At that time the alien may be released upon a showing by clear and convincing evidence that he or she is not a danger to the community or a flight risk. 8 C.F.R. §§ 236.1(c)(3), 1236.1(c)(3).

Thus, while aliens detained under § 1225(b) are not entitled to a bond hearing while detainees under § 1226(a) are (subject to exceptions at § 1226(c), inapplicable here). The Government contends that Giron Reyes is an applicant for admission who, under § 1225(b)(2), cannot be released pending her removal proceedings. Giron Reyes resists being categorized as an applicant for admission and contends that the Government must abide by the procedures under § 1226(a), thus entitling her to a bond hearing.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 65 authorizes federal courts to issue TROs or preliminary injunctions. Such relief is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Thus, the movant has the burden of establishing its propriety. *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 705 (8th Cir. 2011). There are four factors (known as the *Dataphase* factors) to consider before I may grant injunctive relief: (1) the likelihood of success on the merits, (2) the threat of irreparable harm to a movant absent an injunction, (3) the balance of harms an injunction would have on the other parties and (4) the public interest. *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). "No factor is determinative, but the movant's probability of success is the most significant." *Wilbur-Ellis Co. v. Jens*, 139 F.4th 608, 611 (8th Cir. 2025) (citing *Wilbur-Ellis Co. v. Erikson*, 103 F.4th 1352, 1356 (8th Cir. 2024)).

## IV. DISCUSSION

Giron Reyes requests either a TRO or preliminary injunction. A TRO is not appropriate in this instance. TROs are "temporary," lasting for only 14 days—with the possibility of extension into 28 days. Fed. R. Civ. P. 65(b)(2). Given their temporary status, they are not typically appealable. *Id.*; *see also Trump v. J.G.G.*, 604 U.S. 670, 1012 (2025) (Sotomayor, J., dissenting); *Dep't of State v. AIDS Vaccine Advoc. Coal.*, 145 S. Ct. 753, 754 (2025) (mem.) (Alito, J., dissenting). Because issuing a TRO in Giron Reyes' favor would require the Government give her a bond hearing, it would effectively insulate the order from review until after Giron Reyes has already received her requested relief. I find that a preliminary injunction—which is reviewable—is the only practical option to consider in this situation.

### A. *Exhaustion*

The Government first argues that I should decline to consider Giron Reyes' motion until she exhausts her administrative remedies. Specifically, it refers to Giron Reyes' ability to request the Board of Immigration Appeals (BIA) review the immigration judge's decision concerning a bond. *See* 8 C.F.R. § 1003.1(b)(7). The Government first contends that 8 U.S.C. § 1252(d) requires Giron Reyes to exhaust her administrative remedies before any federal court review. Doc. 12 at 15. However, that subsection applies only to the review of a final order of removal. *See* 8 U.S.C. § 1252(d) ("A court may review a final order of removal only if—"). Because the decision Giron Reyes challenges is neither final nor an order of removal, the provision is inapplicable. *Cf. Araujo-Cortes v. Shanahan*, 35 F. Supp. 3d 533, 538 (S.D.N.Y. 2014) ("There is no statutory requirement that a habeas petitioner exhaust his administrative remedies before challenging his immigration detention."); *J.O.E. v. Bondi*, ___ F. Supp. 3d ___, 2025 WL 2466670, at *5 (D. Minn. Aug. 27, 2025).

The Government suggests that I may nonetheless require exhaustion if I find it prudential. The Government does not point to any binding authority as to how I should

5

frame my discretion, but it does propose three factors: (1) whether agency expertise would help develop a record to reach a decision, (2) whether relaxing exhaustion would encourage the deliberate bypass of the administrative scheme and (3) administrative review is likely to allow the agency to correct its mistakes. Doc. 12 at 15 (citing *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)).

These considerations do not favor requiring exhaustion. Giron Reyes raises a question of statutory interpretation, whether she qualifies as an "applicant for admission." This is a legal issue already fit for judicial review; additional development of the factual record is not necessary to address that issue. Further, taking up the issue may "answer a recurring legal question," dissuading the issue from arising in the future after its settling. *Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239, 1252 (W.D. Wash. 2025). Finally, administrative review offers scant chance of the agency reversing course. The BIA has already adopted the position that aliens such as Giron Reyes are applicants for admission. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 228 (2025); *see also* Doc. 12 at 16 n.6 (conceding that *Yajure Hurtado* applies to Giron Reyes). Under these circumstances, I will not require exhaustion.

### B. *Jurisdiction Channeling and Jurisdiction Stripping*

The Government next asserts that the overall immigration statutory scheme divests this court of jurisdiction. It first claims that Giron Reyes' challenge takes aim at the Attorney General's decision "arising from . . . the commencement of proceedings." Doc. 12 at 12 (citing 8 U.S.C. § 1252(g)). If that is true, then I agree that this court would not have jurisdiction. But it is not true. Rather than challenging the Government's decision to commence proceedings, Giron Reyes is challenging her continued detention without a bond hearing. The Supreme Court has cautioned against the "uncritical literalism" that would give § 1252(g) such sweeping effect. *Jennings*, 583 U.S. at 294.

The Government's citations to § 1252(b)(9) are similarly unavailing. That subsection forestalls judicial review "of all questions of law and fact . . . arising from

6

Case 5:25-cv-04048-LTS-MAR    Document 15    Filed 09/23/25    Page 6 of 13

any action taken or proceeding brought to remove an alien" until after a final order. 8 U.S.C. § 1252(b)(9). Again, however, Giron Reyes is not "challenging the decision to detain [her] . . . or to seek removal; and [she is] not even challenging any part of the process by which their removability will be determined. . . . [Section] 1252(b)(9) does not present a jurisdictional bar." *Jennings*, 583 U.S. at 294–95.[2] In sum, no statutory provision bars this court from addressing the merits of Giron Reyes' motion.

## C. *Dataphase* Factors

### 1. *Likelihood of Success on the Merits*

Giron Reyes argues that the Government's denial of her requested bond hearing violates her Fifth Amendment right to due process, violates federal law and its own administrative procedures. Doc. 3-1 at 6. Aliens have due process rights to life, liberty and property. *Mathews v. Diaz*, 426 U.S. 67, 77 (1976). Since Giron Reyes is in governmental custody, her liberty interest is at stake. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). For present purposes, the Government concedes that if Giron Reyes is not an applicant for admission, then she would be entitled to a bond hearing. Doc. 12 at 11 n.5. Thus, if Giron Reyes is not an "applicant for admission," the denial of her request for a bond hearing likely violates her due process rights.

Section 1225(a)(1) states:

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

8 U.S.C. § 1225(a)(1). The term "admitted" means "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C.

---

[2] The *Jennings* Court also rejected the argument that detention is itself an action taken to remove an alien. *Id.* at 295 n.3.

§ 1101(a)(13)(A). Thus, the Government argues that any alien who illegally entered the United States without having been inspected by an immigration officer is an applicant for admission.

That reading is broad, but intuitive as no qualifiers limit the scope on timing or entry grounds. Under this interpretation, because Giron Reyes admits having entered the United States without inspection two decades ago (Doc. 3-1 at 1), she would be an applicant for admission. And because § 1225(b)(2) is the "catchall provision that applies to all applicants for admission," *Jennings*, 583 U.S. at 287, the Government contends that it must apply to Giron Reyes.

On the other hand, even statutory language that is unambiguous in isolation must be read in context. *See Yates v. United States*, 574 U.S. 528, 537 (2015) (plurality); *Pulsifer v. United States*, 601 U.S. 124, 133 (2024). The context clues present here point against Giron Reyes' classification as an applicant for admission. I find the analysis in *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025), which I hereby incorporate, to be particularly persuasive on this point.[3] Considering § 1225 alongside its § 1226 companion demonstrates that the most natural interpretation of § 1225 is that it applies to aliens encountered as they are attempting to enter the United States or shortly after they gained entry without inspection. Section 1225 repeatedly refers to aliens entering the country. *See* 8 U.S.C. § 1225(b)(1)(A)(i) (screenings for aliens "arriving in the United States"); *id.* § 1225(b)(2)(C) (aliens "arriving on land . . . from a foreign territory contiguous to the United States" may be returned to that territory pending removal proceedings); *id.* § 1225(d)(1) (immigration officers authorized to inspect "any vessel, aircraft, railway car, or other conveyance or vehicle in which they believe aliens are being brought into the United States"). The

---

[3] As noted in *Pizarro Reyes*: "At least a dozen federal courts concur generally with this Court's interpretation of the statutory language as applied in this context." 2025 WL 2609425, at *7 (citing cases). I am aware of no federal court decision adopting the Government's current, expansive interpretation of § 1225.

8

statute further explicitly addresses "crewm[e]n" and "stowaway[s]" in § 1225(b)(2), reflecting that Congress envisions applicants for admission as being arriving aliens. In addition, its sister statute, 8 U.S.C. § 1225a, focuses on the pre-inspection of aliens entering the country at foreign airports. In sum, § 1225 is set up with arriving aliens in mind.

Compare that to § 1226's broader language that realistically applies to any alien awaiting a removal decision. Considering § 1225 in its entirety, and in relation to § 1226, reveals that § 1225 is more limited than what that plain text of § 1225(a)(1) might indicate when construed in the abstract.

Moreover, courts construe statutes "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009). Adopting the Government's reading would be to find recent congressional enactments superfluous. Congress passed the Laken Riley Act to amend § 1226(c) and include more classes of aliens who are ineligible for bond under § 1226(a). Laken Riley Act, Pub. L. No. 119-1, sec. 236, § 2, 139 Stat. 3, 3 (2025). One of those new classes of non-bondable aliens are aliens not admitted into the United States who were charged with specific crimes. 8 U.S.C. § 1226(c)(1)(E) (citing *id.* § 1182(a)(6)(A)). Under the Government's expansive interpretation of § 1225, the amendment would have no purpose. Section 1225(b)(2) would already provide for mandatory detention of every unadmitted alien, regardless of whether the alien falls within one of the new classes of non-bondable aliens established by the Laken Riley Act.

In short, for purposes of Giron Reyes' motion for entry of a preliminary injunction, I find that she is likely to succeed on the merits of her habeas petition, at least to the extent that she is entitled to a bond hearing. This factor weighs in favor of a preliminary injunction.

9

### 2. *Threat of Irreparable Harm*

Giron Reyes has been in the United States for two decades without criminal history. Doc. 1-2 at 180. She has three children who are United States citizens and a husband. *Id*. at 63–67. One of her sons suffers from diagnosed emotional issues and had recently run away from home. *Id*. at 69, 74. Giron Reyes fears that her absence is exacerbating those issues. Doc. 3-1 at 2; *see also* Doc. 1-2 at 99–102, 124, 129. Before her arrest, she was gainfully employed (Doc. 1-2 at 171), pursuing a certificate in lay ministry at The University of St. Thomas (*id*. at 98, 102–08) and maintaining strong ties to her community and her church. *Id*. at 77–81, 88–90, 92–98.

Giron Reyes suffers from diabetes and high cholesterol that she manages with medication. *Id.* at 50, 148–57. In the first several days of her detention, she reports not having had access to those medications, which ultimately took a Senator's intervention before access was restored. *Id.* If true, her reported distress over her health is reasonable. *Id.*

Further, in preparation for her bond motion, Giron Reyes marshalled 35 letters of support from her community.[4] *See generally id.* at 92–130. The authors laud her as a compassionate and caring mother and member of the community. One went so far as to volunteer as a sponsor for Giron Reyes should she be released. *Id.* at 159.

In addition to Giron Reyes' individual circumstances, it is important to note that she is being subjected to an indefinite civil confinement. There are only narrow, nonpunitive circumstances under which a special justification authorizes such restraint. *Zadvydas*, 533 U.S. at 690. Which the removable status of an alien, standing alone, does not qualify. *Id.* at 691–92. By seeking detention under § 1225(b), the Government deprives a suspected alien the chance for a bond determination, thus taking away an individualized finding of dangerousness or flight risk to keep the alien detained throughout the removal proceedings. *Cf. Jennings*, 583 U.S. at 330–31 (Breyer, J.,

---

[4] One letter is a duplicate that I am counting once. *See* Doc. 1-2 at 93–94.

dissenting). Given Giron Reyes' circumstances, which would seem to make her a worthy candidate for release on bond (at least if she were seeking bond in the criminal context), a protracted civil detention clearly threatens irreparable harm. This factor weighs in favor of a preliminary injunction.

### 3. Balance of the Equities and Public Interest

The balance of the equities and considerations of the public interest are typically distinct, yet they merge when the federal government is the party opposing the injunction. *Nken v. Holder*, 556 U.S. 418, 435 (2009). How much weight to give these factors is unclear. *Compare Noem v. Vasquez Perdomo*, 606 U.S. ___, 2025 WL 2585637, at *1 (Sept. 8, 2025) (mem.) (Kavanaugh, J., concurring) ("Particularly in 'close cases,' the Court also considers the balance of harms and equities to the parties, including the public interest." (quoting *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (per curiam))), *with NetChoice LLC v. Fitch*, 606 U.S. ___, 2025 WL 2350189, at *1 (Aug. 14, 2025) (Kavanaugh, J., concurring) (even though law was "likely unconstitutional," application to vacate stay should be denied because petitioner failed to "sufficiently demonstrate[ ] that the balance of harms and equities favors it"). Regardless of their proper weight, the result here is equivocal.

As already discussed, Giron Reyes' interest in receiving a bond hearing is significant. However, the Government provides at least some measure of a counterweight. The Government has a considerable interest in controlling the presence of aliens in this country. *See Dep't of State v. Munoz*, 602 U.S. 899, 911–12 (2024) ("[T]he through line of history is recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens."). In addition, recent Supreme Court orders acknowledge the harm a governmental agency incurs when it is enjoined from acting within its apparent scope of authority. *See, e.g.*, *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153 (2025) (mem.); *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025) ("[T]he Government faces greater risk of harm from an order allowing a removed

officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty."); *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (alteration in original) (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012)).

Of course, an injunction that simply compels the Government to grant Giron Reyes a bond hearing (while not compelling her release), is a limited imposition on the Government's interests. Nonethless, I will consider the net effect of these merged factors to be neutral.

### 4. *Summary*

As noted above, a preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24. After balancing the *Dataphase* factors however, I find a limited preliminary injunction to be appropriate. Specifically, I find that Giron Reyes has met her burden of showing that she should be granted a bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a).

Although this is a form of relief that Giron Reyes seeks through her habeas petition, this order does not resolve her underlying case, as she is also seeking immediate release from custody. Thus, I will direct the Clerk's office to enter a standard merits briefing schedule.

### V. CONCLUSION

For the reasons set forth herein:

1. Respondent Harlow's motion (Doc. 14) for joinder is **granted**.

2. Petitioner Maria del Rosario Giron Reyes' motion (Doc. 3) for a temporary restraining order and a preliminary injunction is **granted in part** and **denied in part**, as follows:

      a.     The motion is **denied** to the extent that it seeks a temporary restraining order.

      b.     The motion is **granted** to the extent it requests a preliminary injunction requiring a bond hearing before an immigration judge. The Respondents are hereby **enjoined** from depriving Giron Reyes of an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and shall provide her with such a hearing within **14 days** of the date of this order.[5]

      c.     The motion is **denied** to the extent it requests a preliminary injunction requiring Giron Reyes' immediate release from custody.

3.     The Clerk's office is **directed** to enter a standard 2241 habeas briefing schedule.

**IT IS SO ORDERED** this 23rd day of September, 2025.

_____
Leonard T. Strand
United States District Judge

---

[5] In the alternative, of course, the Respondents may choose to release Giron Reyes from custody.